THOMAS STEFANIK *vs.* STATE BOARD OF PAROLE & others.[1]

Hampden.    December 9, 1976. — June 9, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Parole.* Revocation.    *Practice, Criminal,* Probable cause hearing.    *Constitutional Law,* Due process of law.

A parolee who had had a probable cause hearing on new criminal charges was not constitutionally entitled to a separate preliminary hearing for parole revocation based on those charges.    [735]

CIVIL ACTION commenced in the Superior Court on November 22, 1974.

---

[1] Paul A. Chernoff, chairman, Michael Haynes, Gertrude Cuthbert, Stephen Blesofsky, George Keefe, Robert Bolster, and Robert Bohn, as they are individual members of the State Board of Parole.

The case was reserved and reported by *Moriarty,* J., to the Appeals Court. The Supreme Judicial Court, on its own initiative, ordered direct review.

*Arlene Marcus* (*Ann Hoffman* with her) for the plaintiff.

*Michael Magruder,* Special Assistant Attorney General, for the defendants.

QUIRICO, J.   By this civil action, the plaintiff seeks to enjoin the defendant State Board of Parole (board) from revoking his parole and from returning him to any facility of the Massachusetts correctional system outside of Hampshire or Hampden counties without first affording him a "preliminary hearing" to which he claims entitlement under the Fourteenth Amendment and the decision in *Morrissey* v. *Brewer,* 408 U.S. 471 (1972). A judge of the Superior Court ruled that in the circumstances of this case there was no constitutional right to a preliminary hearing for parole revocation because the defendant had already had a probable cause hearing in a District Court and had been bound over to the grand jury on the same acts on which the board proposes to revoke the parole. The judge reported the issue to the Appeals Court, G. L. c. 231, § 111, Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and we transferred the case on our own motion. G. L. c. 211A, § 10 (A). For reasons hereafter stated, we concur with the decision of the Superior Court judge.

The facts are undisputed. In March, 1973, the plaintiff was paroled from the Massachusetts Correctional Institution at Walpole, where he had been serving a five- to eight-year sentence for possession of a controlled substance with intent to sell. G. L. c. 94C, § 32. Sometime later he was arrested and charged as an accessory after the fact to armed robbery. On another occasion he was arrested and charged with various violations of the controlled substances law. G. L. c. 94C.[2] After probable cause hearings in the District

---

[2] The record does not reveal precise details of these charges. The defendant was later indicted for possession of Class B substances (co-

Court, he was bound over to the grand jury. Indictments have been returned against him on both charges.

The sole question raised by this report is whether the decisions in *Morrissey* v. *Brewer,* 408 U.S. 471 (1972), and *Gagnon* v. *Scarpelli,* 411 U.S. 778 (1973), require a preliminary parole revocation hearing where the basis of the alleged parole violation is a probable cause finding in the District Court. See G. L. c. 127, §§ 128, 130, 131, 133A, 148, 149. To resolve this question we must compare the constitutional command with the purpose and function of the bind-over hearing.

In *Morrissey* v. *Brewer, supra,* the Court held that due process requires a hearing before a paroled individual suffers the "grievous loss" of parole revocation. While the Court stated that it was not writing a code of procedure, *id.* at 488, it described a two-stage procedure that would satisfy due process requirements. The first stage involves the arrest of the parolee and an informal preliminary hearing; the second stage involves the formal revocation hearing.

The preliminary hearing is "some minimal inquiry" conducted "by someone not directly involved in the case" to "determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485. This is "a wholly retrospective factual question." *Id.* at 479. The parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The parolee may appear and speak, or present witnesses or documentary evidence. Some questioning of adverse witnesses is suggested, but confrontation and cross-examination are not required if an informant might be subjected to risk of harm. *Id.* at 487.

---

deine and morphine), possession of a Class B substance with intent to sell, possession of a Class D substance with intent to distribute (marihuana), possession of a Class D substance, possession of a hypodermic needle, and receiving stolen property.

The hearing officer — who may be an administrative and not a judicial officer, *id.* at 486 — shall make an informal summary of the proceeding, and state the reasons for his determination whether there is probable cause to hold the parolee for the final decision of the parole board on the question of revocation. The Court expressly eschewed a rigid and mandatory approach: "No interest would be served by formalism in this process." *Id.* at 487.

The second stage contemplated by the Court was a formal revocation hearing complying with minimum requirements of due process.[3]

In *Gagnon* v. *Scarpelli,* 411 U.S. 778 (1973), the Court applied a similar analysis to probation revocation.[4] The court reaffirmed the two-stage procedure: "At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing. . . . The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause . . . ." *Id.* at 786. The Court reiterated that it did not intend "to foreclose the States . . . from developing . . . creative solutions to the practical difficulties of the *Morrissey* requirements." *Id.* at 782-783 n.5. The Court further declined to adopt a per se rule requiring the ap-

---

[3] These minimum requirements included "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 489. See *Gagnon* v. *Scarpelli,* 411 U.S. 778, 786 (1973).

[4] "[W]e hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer, supra.*" *Gagnon* v. *Scarpelli, supra* at 782.

pointment of counsel in every case of parole or probation revocation. *Id.* at 790.

In *Moody* v. *Daggett,* 429 U.S. 78 (1976), the Court held that a Federal parolee who was imprisoned for Federal crimes committed while on parole and which constituted parole violations was not constitutionally entitled to an immediate parole revocation hearing. In n.7, at 86, the Court said that "where petitioner has already been convicted of and incarcerated on a subsequent offense, there is no need for the preliminary hearing which *Morrissey* requires upon arrest for a parole violation." The Court stated further that "the subsequent conviction obviously gives the parole authority 'probable cause or reasonable ground to believe that the ... parolee has committed acts that would constitute a violation of parole conditions," quoting from *Morrissey* v. *Brewer, supra* at 485. Thus, at a minimum, *Moody* v. *Daggett, supra,* establishes that the preliminary parole hearing may be dispensed with in certain circumstances.

At issue in the present case is the necessity of the preliminary and not the final parole revocation hearing. There is no contention that the parole board would or could revoke parole without the second stage formal procedure expressly required by *Morrissey* v. *Brewer, supra.* The only question is whether a bind-over hearing in the District Court can be treated as the equivalent of a preliminary hearing for parole revocation purposes. We approach this inquiry with the view that the United States Supreme Court did not intend "to create an inflexible structure." *Id.* at 490.

We must therefore assess the purpose and scope of the bind-over hearing to see if it gives the plaintiff the same protections as the preliminary hearing suggested by the *Morrissey* and *Gagnon* cases.

In *Myers* v. *Commonwealth,* 363 Mass. 843 (1973), we held that G. L. c. 276, § 38, grants a defendant at a probable cause hearing the right to cross-examine prosecution witnesses and to present his own witnesses. In *Corey* v. *Commonwealth,* 364 Mass. 137 (1973), we held that G. L.

c. 218, § 30, and G. L. c. 276, § 42, granted similar rights to defendants at bind-over hearings. Both cases explored in some detail the function of a preliminary hearing, whether it be for a criminal charge which, if there is probable cause, must be transferred to the Superior Court, *Myers* v. *Commonwealth, supra,* or for a criminal charge over which the District Court may exercise final jurisdiction, *Corey* v. *Commonwealth, supra.*

Those discussions of District Court hearings are relevant here, but need not be repeated in full. As we said in *Myers* v. *Commonwealth, supra* at 847, "Defendants are held for trial only if the examining magistrate finds (1) 'that a crime has been committed' *and* (2) 'that there is probable cause to believe the . . . [accused] guilty.' G. L. c. 276, § 42 (and see G. L. c. 276, § 41). These two requirements are designed to establish an effective bind-over standard which distinguishes between groundless or unsupported charges and meritorious prosecutions. Thus, the preliminary hearing's primary function is to screen out at this early but critical stage of the criminal process those cases that should not go to trial, thereby sparing individuals from being held for trial, and from being unjustifiably prosecuted . . . ." We determined that "the minimum quantum of evidence required to find probable cause to bind over," *id.* at 850, is the familiar directed verdict standard: "The examining magistrate should view the case as if it were a trial and he were required to rule on whether there is enough credible evidence to send the case to the jury. Thus, the magistrate should dismiss the complaint when, on the evidence presented, a trial court would be bound to acquit as a matter of law." *Ibid.* See *Corey* v. *Commonwealth, supra* at 140-143; *Commonwealth* v. *Clemmons,* 370 Mass. 288, 296-297 (1976) (Quirico, J., dissenting), and cases cited.

A probable cause hearing under the *Myers* and *Corey* cases more than satisfies the "minimal inquiry" called for by *Morrissey* v. *Brewer, supra.* The foundation requirements of notice, opportunity to appear and to present evidence, a conditional right to confront witnesses, and

an independent decision maker clearly are present. Indeed, *Myers* and *Corey* exceed these requirements in several respects. A judge of the District Court — and not a parole officer — conducts the hearing. The probable cause determination "must be based on competent testimony which would be admissible at trial," *Myers* v. *Commonwealth, supra* at 849 n.6, rather than the informal evidentiary standards of *Morrissey* v. *Brewer, supra.*[5] Perhaps most important, a defendant has a constitutional right to counsel at a probable cause hearing. *Coleman* v. *Alabama,* 399 U.S. 1 (1970). *Myers* v. *Commonwealth, supra* at 847-848. *Commonwealth* v. *Britt,* 362 Mass. 325, 330-331 (1972). The Supreme Court has avoided any intimation of such a right with respect to the preliminary parole revocation proceeding. *Gagnon* v. *Scarpelli, supra.*

Other courts have considered whether a probable cause hearing for new criminal charges may simultaneously serve as the *Morrissey* prerevocation hearing. In *In re Law,* 10 Cal. 3d 21, 27 (1973), the Supreme Court of California determined that the probable cause hearing might serve as the first *Morrissey* hearing if such hearing occurs promptly after the charged offense and the parolee is given notice of the dual purpose of the hearing: "[W]here the conduct which constitutes a prima facie violation of parole is also independently charged as a new felony the procedures afforded through the holding of a preliminary hearing are inclusive of or may be made to conform to the procedures mandated in *Morrissey* .... In such instances no purpose would be served by requiring a determination that there exists probable cause to believe that a par-

---

[5] Under *Morrissey* v. *Brewer, supra* at 487, a parolee is entitled to an informal summary of the proceeding and a statement of reasons if a determination of probable cause is made. In *Commonwealth* v. *Britt,* 362 Mass. 325 (1972), we held that the Commonwealth was not required to provide a free typewritten transcript of the probable cause hearing. A judge in his discretion may, of course, order a transcript. See G. L. c. 276, § 40. See *Britt* v. *McKenney,* 529 F.2d 44 (1st Cir. 1976). A formal complaint containing a statement of charges forms the predicate of the bind-over hearing. The defendant is thus sufficiently informed of the reasons for a determination of probable cause.

ticular act occurred which constitutes a violation of parole independently of a prior determination of the existence of probable cause of the commission of a felony grounded on the same occurrence."

In *In re Valrie*, 12 Cal. 3d 139 (1974), cert. denied, 420 U.S. 938 (1975), the court held that a parolee who is indicted by a grand jury for a subsequent criminal offense is nonetheless entitled to a *Morrissey* prerevocation hearing. In the companion case of *In re LaCroix*, 12 Cal. 3d 146, 150 (1974), cert. denied, 420 U.S. 973 (1975), the court restated the approach of *In re Law, supra*: "The entitlement to a prerevocation hearing does not necessarily mean a hearing which is independent of collateral criminal proceedings involving the same course of alleged misconduct." These various principles were reaffirmed in *In re Shapiro*, 14 Cal. 3d 711, 716 (1975). See Cassou, The *Morrissey* Maelstrom: Recent Developments in California Parole and Probation Revocations, 9 U.S.F.L. Rev. 43 (1974).

Various other courts have decided that the probable cause hearing for a new criminal charge may also serve as a *Morrissey* prerevocation hearing. In *United States ex rel. Dereczynski* v. *Longo*, 368 F. Supp. 682, 687 (N.D. Ill. 1973), aff'd 506 F.2d 1403 (7th Cir. 1974), the court said: "[W]e believe that if the conduct which constitutes a prima facie violation of parole is also independently charged as a new felony, it may be appropriate to merge the probable cause hearing and the preliminary hearing so as to eliminate needless duplication. Due process would further require, however, that a parolee have fair notice of the nature and effect of a hearing intended to serve such a dual purpose."

In *Inmates' Councilmatic Voice* v. *Rogers*, 541 F.2d 633, 636 (6th Cir. 1976), the court said that a parolee "would not be entitled to a preliminary hearing if he has been bound over to the Grand Jury by a state judicial officer."

Florida has reached a similar conclusion. *State* v. *Griffith*, 331 So. 2d 313 (Fla. 1976). *Bernhardt* v. *State*, 288 So. 2d 490, 500 (Fla. 1974). The Supreme Court of New

Hampshire was confronted with this question in *Belton v. Vitek,* 113 N.H. 183 (1973), but did not resolve it because the case was moot. We have found no substantial authority that reaches a contrary conclusion.[6]

There are admittedly reasons why a parolee would prefer a *Morrissey* prerevocation hearing in addition to the probable cause hearing. The plaintiff suggests that the additional hearing would permit a parolee to (1) correct mistaken facts in parole board records, (2) demonstrate procedural violations at the probable cause hearing, (3) present exculpatory evidence inadmissible at a probable cause hearing, (4) present a defense he does not want to reveal at the probable cause hearing, and (5) persuade the parole board, despite the probable cause finding, to permit him to remain at liberty pending the final revocation hearing.

None of these reasons suffices to prevent the probable cause hearing from serving dual functions. First, the plaintiff's suggestions are abstractions, unaccompanied by any claim of factual errors, procedural violations, or the existence of any exculpatory evidence or plausible defenses which he was unable to present or raise in the probable cause hearing given to him. Second, no claim of possible error in fact-finding is foreclosed to the plaintiff. He remains constitutionally entitled to a formal revocation hearing where any claim of mistake or error may be fully aired. Third, most of these suggestions show a desire to supple-

---

[6] The plaintiff relies on two cases on this point. In *Thompson v. McEvoy,* 71 Misc. 2d 902 (N.Y. Cortland County Ct. 1972), the judge, in a case he said was moot, ordered parole officials to grant prompt preliminary revocation hearings where parolees had been arrested on new charges. There is no discussion of the process leading to arrest, or the availability of probable cause proceedings.

In *People ex rel. Harvey v. Skinner,* 73 Misc. 2d 257 (N.Y. Sup. Ct. Monroe County 1973), the court relied on the *Thompson* case, *supra,* without citation to other authority, and again without discussion of the procedures which lead to the pending criminal charges, to reach a similar result.

We do not consider these two precedents convincing; we have found no opinion of the Court of Appeals of New York which indorses the views expressed therein.

Stefanik *v.* State Board of Parole.

ment or attack the probable cause proceeding through the vehicle of a separate *Morrissey* prerevocation hearing. Yet the parolee should seek to resolve these issues in the probable cause hearing, and not by collateral attack. Indeed, the Supreme Court expressly stated in *Morrissey* v. *Brewer, supra* at 490, that "a parolee cannot relitigate issues determined against him in other forums." The parolee is thus left with the complaint that he is forced to make certain strategic decisions about the conduct of the probable cause hearing which he would prefer not to make. One may agree that two different hearings might present different strategic choices and opportunities, without agreeing that this full range of litigation strategies is a constitutional requirement. See *McGautha* v. *California,* 402 U.S. 183, 213 (1971).

It is true that without a separate prerevocation hearing the parolee is deprived of the opportunity to persuade the board to permit him to remain at liberty pending a final revocation hearing. However, the board has, in effect, followed a practice that those parolees who have been bound over on felony charges will not be permitted to remain at liberty for the short period required for the final hearing. While this practice is constitutionally defensible, we do not intend to foreclose the board from granting such hearings in its discretion, particularly where a parolee specifically requests a hearing.

For these several reasons, we agree with the decision of the judge of the Superior Court that "the plaintiff has already been granted a much more extensive hearing than that prescribed in *Morrissey* v. *Brewer.*" He has had a probable cause hearing in the District Court and has been bound over to the grand jury because there is probable cause to believe he has committed felonies during his parole. He need not be granted a separate hearing to determine whether there is reasonable cause to believe he has violated the conditions of his parole, because such a determination has already been made. See *Martin* v. *State Bd. of Parole,* 350 Mass. 210, 213 (1966), and cases cited.

There is nothing in the due process clause of the Four-

teenth Amendment or in art. 12 of our Declaration of Rights which persuades us to reach a contrary result. The flexible contours of *Morrissey* v. *Brewer, supra,* are well satisfied by the procedures adopted by the board. We are not inclined to add another mandatory layer of process to our overworked criminal justice system, though nothing in this decision should be read as prohibiting the board from conducting preliminary parole revocation hearings when in its judgment such hearings seem merited.

The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*